UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBERT LEDERMAN,                )
                                )
       *Plaintiff*,            )
                                )
   v.                           )   Civil Action No. 99-3359 (RWR/AK)
                                )
UNITED STATES OF AMERICA, et al., )
                                )
       *Defendants.*          )

**Plaintiff's Memorandum
in Opposition to the District's
Motion to for Reconsideration of Decision
Denying Motion to Dismiss the Second Amended Complaint
and
in Support of Plaintiff's Cross-Motion for Reconsideration**

    The Court should deny the District of Columbia's motion for reconsideration, and in doing so it should reconsider its analysis of the question whether the Capitol Police Board regulation at issue here constitutes D.C. law for purposes of § 1983.

    Although we agree with the District that the Court was mistaken in stating that District Council has affirmatively adopted the statute authorizing the promulgation of the Capitol Police Board regulations, the Court was correct in its ultimate conclusion that the regulation at issue constitutes D.C. law. As is discussed below, the regulation should be treated as D.C. law because it applies exclusively to the District, because the regulations were enacted pursuant to a delegation of power by Congress in its role as the District's local legislature, and because Congress intended that the regulations be treated as local law. The Court's contrary conclusion on this point is, we submit, mistaken.

    Although the District is also correct in pointing out that the Court did not address its probable-cause argument, that argument is unfounded and should be rejected on the

merits. Contrary to what the District contends, the existence of probable cause is irrelevant where, as in this case, the plaintiff's claim is that he was prosecuted under a statute that is unconstitutional on its face.

## Argument

**A. The Capitol Police Board regulation constitutes D.C. law for purposes of § 1983.**

**1.** Liability under § 1983 is limited to cases where the defendant acted "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia[.]" For purposes of § 1983, "any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

In opposing the D.C. defendants' motion to dismiss, we argued that the Capitol Police Board regulation should be regarded as D.C. law for purposes of § 1983. Although the Court did not conclusively reject our argument, its decision suggests that the Court is leaning in that direction. The decision relies principally mainly on a textual analysis. The Court said that although the Capitol grounds lie exclusively within the District of Columbia the statute delegating rulemaking authority over traffic on the Capitol Grounds could not be regarded as a statute "applicable exclusively to the District of Columbia" because interpreting the statute that way would render the statute's last sentence (providing that a congressional enactment applying exclusively to the District is deemed a D.C. statute) superfluous: "Using Lederman's logic, any law applied exclusively to the District would

also apply 'exclusively' to the United States, because the District sits wholly within the United States. This conclusion renders the last sentence of § 1983 meaningless."[1]

The Court's premise is correct, but it does not support the Court's conclusion. We agree that a statute applicable only to the District could be regarded as applying only to the United States in the sense that such a statute would not apply anywhere in the world other than the United States. But that fact is irrelevant to the question before the Court. The fact that a statute applies to exclusively to the United States does not mean that it applies anywhere in the United States other than the District. Thus, even though the statute at issue here applies exclusively to the United States, the fact remains that within the United States it applies exclusively to the District. Conversely, a statute that applied, for example, to national parks located in the District or in any of the 50 states would apply exclusively to the United States, but would not apply exclusively to the District.

What the last sentence of § 1983 does, then, is to separate out one category of statutes from the broader set of statutes that apply only to the United States and treat the former differently from the latter. This being the case, our interpretation does not in any way render the final sentence a nullity.

In addition to its mistaken textual analysis, the Court said in a footnote, "Laws that have been held to apply exclusively to the District are concerned with the welfare and rights of District residents District-wide, not merely the regulation of traffic on federal property."[2] But although that statement may be an accurate description of the laws that

---

1. Mem. Op. and Order of April 13, 2007, at 5 (D.E. 154).

2. *Id.* at 6 n.2.

happened to be at issue in the cases the Court cited, nothing in those cases suggests that a statute must apply everywhere in the District in order for it to be regarded as applying exclusively to the District. That issue was neither presented nor considered nor decided in any of those cases, and the logic of those cases is not in any way inconsistent with our argument. Thus, the result in the cases cited by the Court did not turn on whether the statutes were, in the Court's words, "concerned with the welfare and rights of District residents District-wide[.]"

In short, neither of the points discussed in the Court's decision supports the conclusion that § 1983 is inapplicable here.

**2.** There are powerful reasons in addition to those set out above for treating the Capitol Police Board regulations as D.C. law for purposes of § 1983. We have presented those arguments in our prior submissions, but for the Court's convenience we will reproduce some of the most important points here.

To begin with, the Capitol's location in the District is not, as the District puts it, a mere "geographical happenstance" having no relevance to the regulations' status as D.C. law. The presence of the Capitol in the District is no coincidence, and the Capitol is not just some random piece of federal property. The District is designated by statute as the seat of government;[3] indeed, it exists as a political entity for the specific purpose of being the seat of government. And the seat of government is by definition the place where the legislature meets. Indeed, by law Congress *must* be based here,[4] So regulations concerning

---

3.  4 U.S.C. § 71.

4.  *See* 4 U.S.C. § 72 ("All offices attached to the seat of government shall be exercised in the District of Columbia, and not elsewhere, except as expressly provided by law.").

the Capitol grounds fall squarely within Congress's power under the Constitution to "exercise exclusive Legislation in all Cases whatsoever" over the District of Columbia.[5]

The fact that the Capitol grounds are federal property does not mean that any regulations applying there must constitute federal rather than D.C. law. The Capitol and the Capitol grounds are not like a foreign embassy—within the District's borders but beyond the reach of its laws. On the contrary, ordinary D.C. law applies on the Capitol grounds. The D.C. Code provides that "[t]he provisions of the several laws and regulations of the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the United States within the District of Columbia."[6] Thus, crimes occurring in the Capitol or on the Capitol grounds are frequently prosecuted under D.C. law and tried in Superior Court.[7] Significantly, these crimes include violations of D.C. law relating to demonstration activity in the Capitol and on the Capitol grounds.[8] And torts committed on the Capitol

---

5. U.S. Const., Art. I, § 8, cl. 17. *See Capitol Traction Co. v. Hof*, 174 U.S. 1, 5 (1899).

6. D.C. Code § 5-133.05 (formerly § 4-116).

7. *E.g.*, *Bieder v. United States*, 707 A.2d 781 (D.C. 1998) (possession of unlicensed pistol in violation of D.C. Code § 22-3204(a)); *Madison v. United States*, 512 A.2d 279 (D.C. 1986) (possession of cocaine in violation of D.C. Code § 33-541(d)); *see generally McEachin v. United States*, 432 A.2d 1212, 1213–16 (D.C. 1981) (criminal provisions of D.C. Code apply on federal property in the District of Columbia and may be prosecuted in Superior Court).

8. *E.g., Hasty v. United States*, 669 A.2d 127 (D.C. 1994) (demonstrating in the Capitol building in violation of D.C. Code § 9-112(b)(7)); *Berg v. United States*, 631 A.2d 394 (D.C. 1993) (demonstrating in the Capitol building in violation of D.C. Code § 9-112(b)(7) and obstructing passage in the Capitol building in violation of D.C. Code § 9-112(b)(5)).

grounds are governed by D.C. law.[9] So there is nothing unusual about the notion that a law applicable to the Capitol grounds can constitute local D.C. law.

Nor is the District's position bolstered by the fact that the Police Board regulations protect national as well as local interests. This is clear from the D.C. Circuit's *en banc* decision in *United States v. Cohen*,[10] where the court considered a congressionally enacted provision under which criminal defendants tried in the District of Columbia who are acquitted of federal crimes by reason of insanity are automatically committed to a mental institution.[11] The court held this to be a valid exercise of Congress's authority to legislate for the District even though the statute applies to those acquitted of federal crimes and even though it serves the national interest in protecting federal officials from harm:

> [T]here would be special reason to exercise [Congress's authority to legislate for the general welfare of the District] with regard to confinement of the insane prone to criminal acts within the Nation's Capitol. Recent events demonstrate, if any demonstration is needed, that the attraction of the mentally disturbed to politically prominent figures is a strong one. *See United States v. Hinckley*, 525 F. Supp. 1342 (D.D.C. 1981). The same concern for the welfare of its officials that induces the United States to assign protective personnel to particular persons and to particular buildings within the District also reasonably reflects itself in special steps to control the criminally insane in this location.[12]

*Cohen* therefore demolishes the argument that the Police Board regulations cannot be regarded as local D.C. law because they are enacted for the benefit of Congress.

---

9.  *See Dellums v. Powell*, 566 F.2d 167, 175 (D.C. Cir. 1977) (applying D.C. law to false-arrest claims arising on Capitol grounds); *Kitt v. Capital Concerts, Inc.*, 742 A.2d 856, 859–61 (D.C. 1999) (applying D.C. law to claims of invasion of privacy, fraud, and intentional infliction of emotional distress arising from events on Capitol grounds).

10. 733 F.2d 128 (D.C. Cir. 1984).

11. D.C. Code § 24-301 (1981).

12. 733 F.2d at 138; *see id..* at 132 n.10, 138–39.

Furthermore, there are many indications that Congress intended the Police Board regulations to be treated as local D.C. law. Congress has provided that violations of the regulations be prosecuted in Superior Court, by the Corporation Counsel (now the Attorney General).[13] As the Supreme Court has explained, the Superior Court was created to perform "functions essentially similar to those of the local courts found in the 50 States of the Union with responsibility for trying and deciding those distinctively local controversies that arise under local law[.]"[14]

What is more, many of the statutory provisions regarding the Capitol and the Capitol grounds appear not only in the United States Code but also in the D.C. Code.[15]

---

13. 2 U.S.C. § 1969(a) (formerly 40 U.S.C. § 212b(a)); D.C. Code § 10-503.25 (formerly § 9-127).

14. *Palmore v. United States*, 411 U.S. 389, 409 (1973).

15. For example:

> D.C. Code § 10-503.01 (formerly § 9-105) (authority of Sergeants at Arms of Senate and House regarding preserving the peace in the Capitol, protecting the Capitol from defacement, and protecting public property in the Capitol);
>
> D.C. Code § 10-503.02 (formerly § 9-107) (duty of Capitol Police to prevent use of Capitol grounds as playgrounds);
>
> D.C. Code § 10-503.11 (formerly § 9-106) (boundaries of Capitol grounds; jurisdiction of Architect of the Capitol);
>
> D.C. Code § 10-503.12 (formerly § 9-108) (travel on Capitol grounds restricted to roads and walkways);
>
> D.C. Code § 10-503.13 (formerly § 9-109) (obstruction of roads on Capitol grounds prohibited);
>
> D.C. Code § 10-503.14 (formerly § 9-110) (sale of goods, advertising, and begging on Capitol grounds prohibited);
>
> D.C. Code § 10-503.15 (formerly § 9-111) (removal or injury of property on Capitol grounds prohibited);
>
> D.C. Code § 10-503.16 (formerly § 9-112) (prohibition of various conduct in the Capitol buildings or on the Capitol grounds, including carrying or discharging firearms,

Among those provisions is the one granting the Capitol Police Board the rulemaking authority under which the no-demonstration regulation was promulgated.[16] And that provision states that in promulgating regulations, the Board may obtain the assistance of the D.C. government.[17] Finally, the D.C. Code permits officers of the Metropolitan Police Department to be detailed and in some cases transferred to the Capitol Police.[18]

To support their argument that the Police Board regulations do not constitute local D.C. law, the District has cited *Thomas v. Barry*, where the D.C. Circuit held that a provision of the D.C. Home Rule Act transferring certain positions from the Department of Labor to the District government was not a law "applicable exclusively to the District of Columbia," because it altered the structure of a federal agency.[19] But *Thomas* must be read narrowly in light of the D.C. Circuit's subsequent *en banc* decision in *Cohen*. For example, *Cohen* rejected the notion (relied on by the District) that Congress's power as our local legislature is limited to acting in ways in which state governments would be free to act.[20]

---

entering the House or Senate chamber without authority, engaging in disruptive conduct with intent to impede congressional business, impeding passage, and engaging in acts of violence);

D.C. Code § 10-503.18 (formerly § 9-114) (defining penalties for unlawful acts in the Capitol buildings or on the Capitol grounds);

D.C. Code § 10-503.19 (formerly § 9-115) (defining responsibility and arrest powers of Capitol Police).

16. D.C. Code § 10-503.25 (formerly § 9-127).
17. D.C. Code § 10-503.25(c).
18. D.C. Code §§ 10-505.01, 10-505.02 (formerly §§ 9-116, 9-117).
19. 729 F.2d 1469 (D.C. Cir. 1984).
20. 733 F.2d at 132 n.10.

In any event, *Thomas* is easily distinguishable from this case. The court in *Thomas* held that the statute at issue there was not exclusively applicable to the District of Columbia because it affected the internal structure and functioning of a federal agency. But the Police Board regulations have no such impact. They are directed at the general public, not at congressional officials as such, and they do not purport to regulate the way in which Congress carries out its legislative business. For example, they have nothing to do with matters such as voting procedures, committee assignments, ethical rules, or legislative staff. So the analogy to *Thomas* is invalid.

The District has also argued that the regulations do not constitute local D.C. law because they "are not enacted for the general welfare of District of Columbia citizens, but rather for the specific benefit of the United States Congress." But *Cohen* establishes that this is a false dichotomy: measures protecting federal officials and federal institutions can promote the general welfare of the District.[21] Indeed, a law benefiting Congress by definition benefits the District's local legislature. Just as a state or municipal legislature has the power to enact laws to protect and promote its own functioning, Congress possesses such power in its capacity as the local government of the District.

Finally, the D.C. defendants argue that the Police Board regulations are not tailored to meet specifically local needs. But this argument rests on the assumption that a law serving federal interests cannot simultaneously serve local needs, and that assumption is invalid. As our discussion of *Cohen* shows, the two categories are not mutually exclusive.

---

21.  *Cohen*, 733 F.2d at 138.

**3.** Even if the Court disagrees with what we have said so far, it should deny the District's motion for reconsideration. The Court held that even if the regulation constitutes federal law, the District can be held liable under *Monell* for the decision to prosecute Lederman under the regulation.[22] The District's motion ignores that holding entirely.

**B.   The existence of probable cause is irrelevant to Lederman's claim for being prosecuted under a regulation that violated the First Amendment on its face and as applied to Lederman.**

Lederman's claim against the District is based on the fact that it prosecuted him for violating a regulation that was unconstitutional on its face and as applied. The. District argues that this claim is barred because there was probable cause to believe that Lederman had violated the Police Board regulation. The argument is unfounded.

**1.**  The shortest and simplest answer to the District's argument is that it conflicts with the D.C. Circuit's decision in this case and with the Superior Court's decision in the prior criminal case against Lederman. Neither of those courts suggested that Lederman's First Amendment argument (as opposed to his damages claim against the arresting officers) was affected in any way by the existence of probable cause.

In fact, the Superior Court held that the regulation was unconstitutional on its face and as applied even though it found beyond a reasonable doubt that Lederman had violated the no-demonstration regulation.[23] Since the District of Columbia was a party to the

---

22. Mem. Op. & Order of April 13, 2007, at 9–10. (D.E. 154).

23. Lederman Decl. Ex. A at 19–20 (D.E. 5).

Superior Court action, the Superior Court's decision precludes the District from relitigating the issue here.[24]

**2.** Even if the District were writing on a clean slate, their argument would still fail. When dealing with a direct restraint on speech—*i.e.*, a law that expressly prohibits speech—the question of probable cause is irrelevant. As far as we are aware, no case has ever suggested that the issue of probable cause plays any part in the analysis of a direct restraint. (As we will show, none of the District's cases involved a direct restraint.) More importantly, the notion that First Amendment protection turns on the presence or absence of probable cause stands the First Amendment on its head.

When considering a law that expressly prohibits speech (such as the Capitol Police Board regulation), the focus under the First Amendment is not on the strength of the evidence that the law has been violated; that is the province of the Fourth Amendment and the due-process clause of the Fifth Amendment. Rather, the focus is on whether the conduct the law prohibits is constitutionally protected. If it is, the law is unconstitutional even if there is no doubt that it was violated.

This is clear from the fact that the First Amendment provides a basis for overturning convictions under statutes that are unconstitutional on their face or as applied in the case before the court.[25] The District's argument cannot be squared with these cases,

---

24. *See* Restatement (2d) of Judgments § 85(3) & comment g (judgment against the government in a criminal prosecution has preclusive effect to the extent permitted by the ordinary rules of preclusion).

25. *E.g.*, *Texas v. Johnson*, 491 U.S. 397 (1989) (overturning conviction for flag-burning); *Brandenburg v. Ohio*, 395 U.S. 444 (1969) (overturning conviction for violation of criminal-syndicalism statute); *Garrison v. Louisiana*, 379 U.S. 64 (1964) (overturning conviction for criminal libel).

because in each of them the challenger's constitutional rights were held to have been violated even though there was not merely probable cause to believe that he had violated the statute, but proof beyond a reasonable doubt.

The District's argument also conflicts with the rules governing suits seeking to enjoin the enforcement of a statute on the grounds that it is unconstitutional. In such an action the plaintiff has standing only if the law is likely to be enforced against him,[26] and that in turn depends on whether his conduct (or his planned conduct) would violate the law.[27] If there is no probable cause to believe that the conduct would violate the law, he has no standing. Under the District's theory, therefore, the very facts necessary to prove standing would bar the plaintiff's claim on the merits. Conversely, the only person who would have a claim on the merits would be someone whose conduct was clearly outside the scope of the statute, but such a person would have no standing.

That is not the only absurdity that would result if the District's theory were adopted. Suppose there was a statute that made it a crime to criticize the President and that someone was charged with violating the statute by carrying a sign saying, "Bush Lied About Iraq." According to the District, that person would have no First Amendment claim because there was probable cause to support the prosecution. But a First Amendment challenge *could* be brought by someone who was arrested for holding a sign that said,

---

26. *See, e.g.*, *American Library Ass'n v. Barr*, 956 F.2d 1178, 1193 (D.C. Cir. 1992) (standing to raise pre-enforcement challenge depends on how likely it is that the statute will be enforced against the challenger).

27. *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 554 (9th Cir. 2003) (plaintiff lacked standing to challenge provision that did not apply to it); *People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) (organization lacked

"God Bless President Bush." Thus, the ability to challenge a statute that was plainly unconstitutional on its face would turn on the viewpoint expressed by the speaker—a result that would itself violate the First Amendment.[28]

Thus, the defendants are quite mistaken in arguing that "the probable cause requirement for a Fourth Amendment seizure is a sufficient safeguard of First Amendment interests" in the present context.[29] The case that they cite for this proposition—*Zurcher v. Stanford Daily*[30]—has nothing to do with this case. The Court in *Zurcher* held only that the First Amendment does not independently limit the government's ability to search a newspaper's offices for evidence of a crime. That holding is irrelevant here because it was based on the conclusion that a search that complies with the Fourth Amendment will not restrain the newspaper's ability to publish or to communicate its views.[31]

Significantly, the Supreme Court has held that when a search or seizure does operate as a restraint on speech (for example, if all copies of a publication are seized), the ordinary Fourth Amendment standard of probable cause does *not* adequately protect First Amendment interests.[32] Expressive materials may be not lawfully be seized as constituting

---

    standing to challenge provision that did not apply to its planned conduct); *Faustin v. City & County of Denver*, 268 F.3d 942, 948 (10th Cir. 2001).

28. *See R. A. V. v. City of St. Paul*, 505 U.S. 377 (1992).

29. D.C. Defs.' Mtn. for Recon. 3.

30. 436 U.S. 547 (1978).

31. *See* 436 U.S. at 565–67.

32. *E.g.*, *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 63–64, 65–66 (1989):

> [W]hile a single copy of a book or film may be seized and retained for evidentiary purposes based on a finding of probable cause, the publication may not be taken out of circulation completely until there has been a

prohibited speech without a finding, based on an adversarial hearing, that they are not constitutionally protected.[33] Even if there was probable cause to believe that Lederman's conduct was unprotected, there certainly was no judicial finding to that effect. So to the extent the law governing searches and seizures is relevant here at all, it provides the District no support.

**3.** The District's argument is based primarily on cases holding that the existence of probable cause will defeat a claim for retaliatory prosecution.[34] But those cases do not support the District's position.

Those cases state a narrow rule limited to claims for retaliatory prosecution, not a broad principle that applies to First Amendment cases generally, and certainly not a rule that governs direct restraints on speech. In the District's cases, as in most retaliatory-prosecution cases, the plaintiff was charged with a statute that was constitutional on its face (usually a statute that is not directed at speech and that does not otherwise impose a burden

---

> determination of obscenity after an adversary hearing. [¶] Thus, while the general rule under the Fourth Amendment is that any and all contraband, instrumentalities, and evidence of crimes may be seized on probable cause . . ., it is otherwise when materials presumptively protected by the First Amendment is involved. . . . [¶] [P]robable cause to believe that there are valid grounds for seizure is insufficient to interrupt the sale of presumptively protected books and films.

See also *Heller v. New York*, 413 U.S. 483, 492-93 (1973).

33. *See, e.g.*, *Marcus v. Search Warrant*, 367 U.S. 717 (1961). *Cf. Blount v. Rizzi*, 400 U.S. 410, 420–21 (1971) (applying a similar rule to orders banning materials from the mail).

34. *Hartman v. Moore*, 547 U.S. 250, 126 S. Ct. 1695 (2006); *Wood v. Kesler*, 323 F.3d 873, 883 (11th Cir. 2003); *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002); *Keenan v. Tejada*, 290 F.3d 252, 260 (5th Cir. 2002); *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992).

on speech), and was prosecuted for conduct that is not constitutionally protected.[35] The prosecution was claimed to be unconstitutional because it was brought for an improper purpose: to retaliate against the plaintiff for asserting his constitutional rights. But Lederman's claim here is not that his prosecution was improperly motivated, it is that he was prosecuted under an unconstitutional regulation for engaging in conduct that was constitutionally protected.  As we have shown, the presence or absence of probable cause is irrelevant in such cases.

The District relies on three additional cases that can be dealt with briefly: *Heck v. Humphrey*,[36] *Michigan v. DeFillipo*,[37] and *Pierson v. Ray*.[38] None of these decisions is remotely pertinent here.

In *Heck* the Supreme Court imposed a special limitation on claims under § 1983 for damages due to an allegedly unconstitutional conviction or imprisonment, or due to some other harm such that a finding for the plaintiff would effectively invalidate a conviction or sentence. In such cases, no claim may be brought under § 1983 unless that the conviction or sentence has been reversed, expunged, or otherwise invalidated.[39] This case does not fall

---

35. *See Hartman*, 546 U.S. at —, 126 S. Ct. at 1700 (charges of conspiracy to defraud the United States, theft, receiving stolen property, mail fraud, and wire fraud in connection with alleged involvement in kickback scheme and for taking allegedly improper actions relating to the search for a new Postmaster General, *see U.S. v. Recognition Equipment Inc.*, 725 F. Supp. 587, 587 (D.D.C. 1989) (decision entering judgment of acquittal in underlying criminal case)); *Wood*, 323 F.3d at 876 (reckless driving); *Dahl*, 312 F.3d at 1232 (bribing a witness); *Keenan*, 290 F.3d at 256 (pointing gun at constable); *Mazzochi*, 959 F.2d at 1175–76 (criminal harassment by sending threatening communication).

36. 512 U.S. 477 (1994).

37. 443 U.S. 31 (1979)

38. 386 U.S. 547 (1967).

39. 512 U.S. at 486–87.

into that category because Lederman was never convicted of the charge against him. Nowhere in *Heck* did the Court deal with the question whether the existence of probable cause can defeat a claim for having been prosecuted under a statute that violates the First Amendment. Moreover, the District's contention that *Heck* somehow incorporated all the elements of the tort of malicious prosecution into the Constitution is nonsense. The Court held only that in the category of cases the Court was dealing with, it was appropriate to borrow one element of claim for malicious prosecution: the requirement that the criminal proceedings against the plaintiff have been resolved in the plaintiff's favor.[40] To the extent that such a requirement applies here, it has been satisfied.

      *DeFillipo* is equally irrelevant. The Court there upheld a drug conviction that was based on evidence that had been found during a search incident to an arrest for violation of a statute that was later held to be unconstitutionally vague. It is distinguishable from this case for two independent reasons. First, *DeFillipo* was decided entirely under the Fourth Amendment, and did not involve a prosecution for conduct that was protected by the First Amendment. Second, *DeFillipo* dealt with the validity of *arrests*, while the claim against the District involves the validity of a *prosecution*. That is significant because the Court's holding was based on its conclusion that "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement."[41] That concern is not implicated by a suit based on an unlawful prosecution. Prosecutions are brought by legally trained prosecutors, not by police officers,

---

40. 512 U.S. at 484–88.

41. 443 U.S. at 38.

and prosecutors the time for research, reflection, and analysis that is unavailable to police officers who must decide on the spot whether to make an arrest.

Finally, *Pierson* involved the personal liability of police officers who are sued for having made arrests under a statute later held to be unconstitutional.[42] We have already discussed the difference between arrests and prosecutions. And the issue of individual liability raises considerations that are not raised where, as here, a claim is being asserted against the municipality rather than an individual municipal employee. As this Court recognized when it rejected the District's defense of prosecutorial immunity, "a municipal corporation does not, by extension, enjoy the benefit of the personal immunities defenses of its officers and employees."[43]

## Conclusion

For the reasons above, the Court should deny the District 's motion for reconsideration. In addition, the Court should grant Lederman's cross-motion and reaffirm its decision denying the District's motion to dismiss.

Respectfully submitted,

/s/ Neal Goldfarb
Neal Goldfarb, No. 337881
Tighe Patton Armstrong Teasdale PLLC
1747 Pennsylvania Ave., N.W., Suite 300
Washington, D.C. 20006
(202) 454-2826
ngoldfarb@tighepatton.com
*Attorney for Plaintiff Robert Lederman*

---

42. 386 U.S. at 555–57.

43. Mem. Op. and Order of April 13, 2007, at 11 (D.E. 154).

*Of Counsel:*
Arthur B. Spitzer
American Civil Liberties Union
 Fund of the National Capital Area
1400 20th Street, N.W., Suite 119
Washington, D.C. 20036
(202) 457-0800